**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

WILLIAM WARNER PARKER
STEPHANIE ANN PARKER

        Debtors

Case No. 07-30697

KONNIE MOLL
BRIAN MOLL

        Plaintiffs

v.

WILLIAM WARNER PARKER
STEPHANIE ANN PARKER

        Defendants

Adv. Proc. No. 07-3037

**M E M O R A N D U M**

**APPEARANCES:**   Konnie Moll
Brian Moll
  2621 SW 98th Street
  Oklahoma City, Oklahoma 73159
  Plaintiffs, *Pro Se*

               LAW OFFICES OF MAYER & NEWTON
  John P. Newton, Jr., Esq.
  Richard M. Mayer, Esq.
  1111 Northshore Drive
  Suite S-570
  Knoxville, Tennessee 37919
  Attorneys for Defendants/Debtors

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiffs, *pro se*, on April 24, 2007, seeking a determination that a judgment entered against the Defendants on January 10, 2006, in the District Court of Cleveland County, Oklahoma, in the amount of $3,500.00, plus post-judgment interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or (6) (2005).[1] The Defendants filed the Defendants' Answer to Complaint (Answer) on February 18, 2008, denying all averments in the Complaint and asserting as an affirmative defense that the Judgment is not entitled to full faith and credit in Tennessee due to improper service and/or lack of jurisdiction.

The trial was held on September 15, 2008. The record before the court consists of fifteen exhibits entered into evidence, along with the testimony of four witnesses, the Plaintiffs and the Defendants.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2005).

# I

In 2004, the Plaintiff, Brian Moll, who was stationed in Japan on Okinawa, was notified that he was being transferred to Oklahoma. At the time, the Plaintiffs owned a 1988 Toyota Hylux Surf truck (Truck) and a "Late 80's" model Toyota Town Ace van (Van) they wanted to sell. In July 2004, Mr. Moll executed a power of attorney authorizing the Defendant, William Parker, to sell the

---

[1] The Complaint filed by the Plaintiffs is, in fact, a letter which the court treated as the complaint. The issues were identified at a scheduling conference held on March 20, 2008, which the Plaintiffs attended telephonically, and were memorialized in the Pretrial Order entered on March 21, 2008.

vehicles.[2] Mr. Moll and Mr. Parker went to the Joint U.S. Forces Vehicles Registration Office where the base registration for the vehicles was transferred to Mr. Parker's military identification number. The Plaintiffs wanted $1,000.00 to $2,000.00 for the Truck and $1,500.00 to $3,000.00 for the Van, but Mr. Moll asked Mr. Parker to "do the best he could do."[3]

Mr. Parker testified that he sold the Truck to Gene DeCamp in November 2004, but he did not recall the purchase price. A Certificate of Transfer was issued, evidencing the date of transfer as November 2, 2004. *See* TRIAL EX. 3. Mr. Parker also testified that he did not handle any money associated with the purchase, but instead, gave the Plaintiffs' address to Mr. DeCamp for him to send the money directly to the Plaintiffs. Sometime in December 2004 or January 2005, the Plaintiffs, who kept in touch with the Defendants via email and an internet gaming website once they returned to the States, learned that the Truck had been sold, but they never received the proceeds from either the buyer or the Defendants. With respect to the Van, Mr. Parker testified that he left it in the "lemon lot" on the military base with a for sale sign and that before the Defendants left Japan on February 2, 2005, he turned the keys over to the Provisional Marshal's Office after notifying his Master Staff Sergeant, Marvin Hipolito. *See* TRIAL EX. 11.

---

[2] There is a discrepancy in the testimony concerning the term of the power of attorney. Pursuant to the Motor Vehicle Registration and Equipment Safety Standards issued by the United States Marine Corps and the Military Police Department's Joint U.S. Forces Vehicle Registration & Inspection Program booklet, which were entered into evidence as Trial Exhibits 5 and 6, respectively, a power of attorney was not to exceed ninety days; however, Mr. Parker testified that the power of attorney was for six months and entered into evidence two Special Powers of Attorney executed by Mrs. Moll in favor of another individual with one-year terms. *See* COLL. TRIAL EX. 8. Because the power of attorney executed by Mr. Moll in favor of Mr. Parker is not in the record, Mr. Parker's testimony is unrefuted.

[3] There is also some discrepancy concerning the prices established by the Plaintiffs before they left Japan, with Mr. Moll testifying that they wanted $2,000.00 for the Truck and $3,000.00 for the Van, and Mr. Parker testifying that the prices were $1,000.00 and $1,500.00, respectively. Nevertheless, both Mr. Moll and Mr. Parker testified that, in the end, Mr. Moll told Mr. Parker to "do the best he could."

In an email to Mr. Parker on January 5, 2005, Mrs. Moll directed him to take the Van and keys to Marco and Dalia Navia, *see* TRIAL EX. 10, and on January 21, 2005, she executed two Special Powers of Attorney, authorizing Dalia Navia to sell the vehicles. COLL. TRIAL EX. 8. Thereafter, on February 10, 2005, Mrs. Moll filed a Statement of Suspect/Witness/Complaint with the Security Forces at Tinker AFB, Oklahoma, averring that Mr. Parker's power of attorney had expired in October 2004, that he sold the Truck by forging Mr. Moll's name, and that he refused to return the keys to the Van so that it could be sold. TRIAL EX. 2.

On November 16, 2005, the Plaintiffs filed an action against the Defendants in the District Court of Cleveland County, Oklahoma (State Court). The Defendants were served with notice of the action in Tennessee, where they then resided, via certified United States Mail, return receipt requested, which was received and signed for on November 21, 2005, by Mrs. Parker. COLL. TRIAL EX. 15. On January 10, 2006, the State Court held a hearing and subsequently entered a Judgment against the Defendants in the amount of $3,500.00. TRIAL EX. 16. Mr. Parker was present for this hearing, but Mrs. Parker was not. Following entry of the Judgment, the Defendants agreed to make payments of $100.00 per month to the Plaintiffs, and some payments were made and received by the Plaintiffs. On December 18, 2006, the State Court entered a Summary Order stating that the Defendants had failed to appear for a hearing, directing that a bench warrant issue for each Defendant, and setting bail at $4,500.00 cash for each Defendant. TRIAL EX. 20.

The Debtors filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on March 5, 2007. The Plaintiffs filed their Complaint on April 24, 2007,[4] averring that the Judgment is nondischargeable because it was grounded on the theft and intentional withholding of the Plaintiffs' Truck and Van.[5]

## II

A determination of the dischargeability of a debt is governed by 11 U.S.C. § 523(a), which, as relevant to this adversary proceeding, provides:

> (a) A discharge under section 727[[6]] . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny [or]
>
> . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

---

[4] *See supra* n. 1.

[5] The Plaintiffs argue that the Judgment was based upon fraud; however, there is no transcript of the State Court proceedings, and the Judgment itself does not state any basis for the $3,500.00 awarded to the Plaintiffs. *See* TRIAL EX. 16.

[6] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523[,]" 11 U.S.C. § 727(b) (2005), accomplishing the goals of Chapter 7 to relieve an "honest but unfortunate" debtor of his debts and allow for a "fresh start" through discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). The Defendants received their discharge on August 7, 2007.

11 U.S.C. § 523(a). Section 523(a) is construed liberally in favor of debtors and strictly against parties seeking a determination of nondischargeability, who bear the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

### A

The Plaintiffs first seek a determination of nondischargeability predicated upon a finding of embezzlement, which, for the purposes of 11 U.S.C. § 523(a)(4) and as it relates to this case, is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996).[7] "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Bd. of Trs. v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007) (quoting *Brady*, 101 F.3d at 1173). "The fraud element may also be satisfied by

---

[7] Section 523(a)(4) encompasses three distinct actions: embezzlement, larceny, and defalcation while acting in a fiduciary duty. Larceny, which is "[t]he unlawful taking and carrying away of property of another with intent to appropriate it to use inconsistent with latter's rights[,]" BLACK'S LAW DICTIONARY 881 (6th ed. 1990), occurs when a debtor wrongfully and with fraudulent intent takes property from its rightful owner. *Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991)). Embezzlement differs from larceny because the embezzler's initial acquisition of the property at issue is lawful. *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 632 (Bankr. N.D. Ohio 2001). Based upon these definitions and the fact that the Plaintiffs initially authorized the Defendants to possess the vehicles, it is clear that embezzlement is the basis upon which the Plaintiffs seek nondischargeability.

Likewise, the third option under § 523(a)(4), defalcation while acting in a fiduciary capacity, is inapplicable. Establishment of a prima facie case of defalcation under § 523(a)(4) requires the following: "1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir. 1997). Because proof of a fiduciary relationship requires that a debtor holds funds in trust for a third party, "the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Garver*, 116 F.3d at 179-80.

a showing of deceit . . . and intent can be inferred from the relevant circumstances." *Powers v. Powers (In re Powers)*, 385 B.R. 173, 179-80 (Bankr. S.D. Ohio 2008).

Here, the record does not support a finding of embezzlement by the Defendants. It is clear that Mr. Moll entrusted the Plaintiffs' Truck and Van to Mr. Parker to be sold after the Plaintiffs were transferred from Japan. He executed a special power of attorney authorizing Mr. Parker to sell the vehicles, accompanied him to the Registration Office, and personally handed over the keys for each vehicle to Mr. Parker before leaving the country. It is also clear that in November 2004, Mr. Parker sold the Truck to a third party, Gene DeCamp, and, when a buyer was not forthcoming and his own transfer back to the States was imminent, he left the Van at the "lemon lot" on base. Although the Plaintiffs were not satisfied with the Defendants' handling of their vehicles, there is nothing in the record evidencing that the Defendants acted fraudulently or deceitfully with respect to the vehicles.

Both Mr. Moll and Mr. Parker testified that it was necessary for the vehicles to be registered on base under a soldier's identification number. Upon authorizing Mr. Parker to sell his vehicles, Mr. Moll accompanied him to the Pass and Decal Registration Office, and the vehicles were registered to Mr. Parker under his military identification number. When the Truck was sold to Mr. DeCamp, Mr. Parker testified that he accompanied Mr. DeCamp to the Pass and Decal Registration Office for the same thing, and then all transactions were handled by the Titling Office, which kept records of the transaction. This testimony was substantiated by Mr. Moll, who testified that the copy of the Certificate of Transfer to Mr. DeCamp was obtained through Mrs. Navia, who got it from the Provisional Marshal's Office on base.

It is undisputed that the Plaintiffs did not receive any money for the Truck, but they have not proved that the Defendants are responsible for the nonpayment. During trial, the Plaintiffs focused upon two emails dated January 5, 2005, from Mr. Parker to Mrs. Moll, wherein Mr. Parker stated the following: "you did not receive [sic] the money????????? that is the address i have, that i sent it to. gene comes back on the 7th i will have to get the money order copies then, if you did not get it then i have to contact the money order place and get a trace to see if it has been cashed or not[,]" TRIAL EX. 9, and "I sent you two money orders to your address over 3 months ago." TRIAL EX. 10. The Plaintiffs argued that these statements prove Mr. Parker received the money for the Truck from Mr. DeCamp and did not send it to the Plaintiffs.

In response to questioning concerning these emails, Mr. Parker explained, to the court's satisfaction, that he did not receive any funds from Mr. DeCamp and that his January 5, 2005 emails were an attempt to help the Plaintiffs get their money from Mr. DeCamp. He testified that he did not handle any of the money but that Mr. DeCamp sent the money directly to the Plaintiffs, and his emails referred to copies of the money orders that he sent to the Plaintiffs as their receipts for tracing. His testimony was corroborated by Mr. Moll, who testified that he received a telephone call from Mr. Parker, who asked if the Plaintiffs had received the money order and assured Mr. Moll that he would get information from the buyer of the Truck and find out what happened, and by an email dated December 31, 2004, from Mrs. Parker to Mrs. Moll, wherein Mrs. Parker states "I am terribly sorry about the vehicles can u at least give me until 10th of Jan to get the money for the truck. Pls.

We will give the keys for the van to them by Monday the 3rd but I need until the 10th to get the money for the truck he is out of touwn [sic]." TRIAL EX. 1.[8]

With respect to the Van, the Plaintiffs eventually had it towed and junked without receiving any payment for it. However, Mr. Parker testified that he was unable to find a buyer for it, and upon his family's departure from Japan in February 2005, he followed proper military procedure and turned the keys to the Van over to the Provisional Marshal's Office, while leaving the Van parked at the "lemon lot" located on base. He also testified that he did not follow Mrs. Moll's directions in her email to him dated January 5, 2005, to turn the keys to the Van over to Mrs. Navia because the vehicle was registered under his name on base, and he did not know about the Special Powers of Attorney Mrs. Moll executed in Mrs. Navia's favor.[9] Mr. Parker's testimony is basically undisputed,[10] and under the circumstances, the court finds his reluctance to turn over the keys to Mrs. Navia was justified since, as he testified, he was the party responsible for the vehicles and his lack of knowledge concerning the power of attorney is understandable since the Special Powers of Attorney were executed by Mrs. Moll in Oklahoma on January 21, 2005, and the Defendants left Japan on February 5, 2005.

---

[8] For her part, Mrs. Parker's testimony that it was only Mr. Parker who handled the sale of the vehicles and that she did not have anything personally to do with it was not rebutted, and neither was her testimony that no money was received or deposited by them in connection with the sale of the vehicles.

[9] In fact, at the time of the January 5, 2005 email, the Special Powers of Attorney to Mrs. Navia had not been executed. *See* TRIAL EX. 8.

[10] The Plaintiffs introduced into evidence a letter dated October 4, 2005, from Mrs. Navia to "To whom it may concern" which states that the Defendants "basicly [sic] abandoned the car" and that Mr. Parker refused to turn the keys over to her and left the first week of February 2005. TRIAL EX. 13. While this letter substantiates that Mr. Parker refused to turn over the keys to the Van to Mrs. Navia, a fact that he does not dispute, it offers no proof as to what Mr. Parker did with the keys, so his testimony that he turned them over to the Provisional Marshal's Office has not been refuted.

Based upon the evidence presented, the Plaintiffs have not proved that the Defendants acted in any fraudulent or deceitful manner with respect to the Plaintiffs' vehicles to justify a determination of nondischargeability under § 523(a)(4).

**B**

The Plaintiffs also seek a determination of nondischargeability for a willful and malicious injury through the conversion of their property under § 523(a)(6). In order to prevail under this subsection, the Plaintiffs must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998). This requires proof that the Defendant either desired to cause the consequences of his actions or he believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10).

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *South Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash America Financial Services v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007),

requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Company v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004).

"An act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' . . . [and does] 'not require ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Lack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *Lupo*, 353 B.R. at 550. In other words, nondischargeability under § 523(a)(6) requires proof that the Plaintiffs were injured and that the Defendant's deliberate or intentional actions caused their injury, but "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Fox*, 370 B.R. at 119.

The Plaintiffs' argument under § 523(a)(6) seems to focus primarily upon the Van, alleging that the Defendants intentionally withheld the keys to the Van despite instructions to turn them over to Mrs. Navia, drove it without permission, damaged it, and abandoned it in the "lemon lot," after which the Plaintiffs were forced to have it towed and junked. In support of these averments, the Plaintiffs introduced into the record Mrs. Navia's letter, in which she states that the Defendants were driving the Van around the base, and a printout of seven digital photographs taken by Mrs. Navia which they argued showed the condition of the Van while sitting on the "lemon lot." *See* TRIAL EX. 13; COLL. TRIAL EX. 7.

11

Mr. Parker testified that he did not drive the Van other than to move it to the "lemon lot." He stated that he did drive a Japanese van to haul hay for a community project feeding animals but that other than driving the Plaintiffs' Van from his home to the "lemon lot," he did not drive it. His January 5, 2005 emails also mention that "the van i was driving was keiko-san's" and "I drove that for 3 weeks because the place i was doing volunteer work at did not want me to mess up my car." TRIAL EX. 9; TRIAL EX. 10.

With respect to the condition of the Van, both of the Plaintiffs testified that they left it in clean condition so that it might be appealing for sale. Mrs. Moll testified that she vacuumed it out, and Mr. Moll testified that it was in the same condition when he left it with Mr. Parker. Along the same lines, both of the Defendants testified that Mr. Parker left the Van at the "lemon lot" in the same condition as it was delivered to him, and that once he left it there, he did not drive it again, and they did not do anything to the Van.[11] In support of their allegations that the Van was in less than clean condition in the "lemon lot" and that it had been damaged, the Plaintiffs relied upon photographs taken by Mrs. Navia, in conjunction with Mr. Moll's testimony that the Van was not in that condition when he left it with Mr. Parker. These photographs, however, which were not on photographic paper but were reproduced on copy paper, are grainy at best, with streaks and unidentifiable markings that appear to be camera or transmission-related,[12] and they do not support or disprove any of the testimony from any of the parties, nor are they conclusive as to anything other

---

[11] Mrs. Parker testified that a typhoon hit the island after the Plaintiffs left and the Van could have been windblown.

[12] As stated, the original photographs were not introduced.

than the presence of the Van in a parking lot. Additionally, Mr. Moll testified that anyone can access the "lemon lot" and that he has no personal knowledge of the Defendants doing anything to the Van.

The Plaintiffs have not established that the Defendants caused any sort of injury to their property, much less that either vehicle was willfully and maliciously converted. As such, their request for a determination of nondischargeability under § 523(a)(6) must be denied.

### III

In summary, the Plaintiffs have failed to meet their burden of proof that the Judgment in the original amount of $3,500.00 rendered by the District Court of Cleveland County, Oklahoma, on January 10, 2006, is nondischargeable under § 523(a)(4) and/or § 523(a)(6). As such, the Judgment was discharged on August 7, 2007, and the Plaintiffs' Complaint shall be dismissed.

An order consistent with this Memorandum will be entered.

FILED: September 19, 2008

> BY THE COURT
>
> /s/ RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE